# EXHIBIT A

Filing # 120353381 E-Filed 01/27/2021 03:33:40 PM

**IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BROWARD COUNTY, FLORIDA**
**SMALL CLAIMS DIVISION**

| | |
|---|---|
| **Steven Harrington,** | |
| *Plaintiff,* | Case No. _____ |
| v. | Ad Damnum: **$7,000 plus Fees & Costs** |
| **Clarity Services, Inc.,** | |
| *Defendant.* | **JURY TRIAL DEMANDED** |

## COMPLAINT & JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Steven Harrington** ("**Mr. Harrington**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**") stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought by Mr. Harrington against the Defendant for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and Section 34.01, Florida Statutes.

3.     The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.     Venue is proper in Broward County, Florida, because the Defendant maintains an agent within Broward County.

## PARTIES

5.      **Mr. Harrington** is a natural person residing in the City of Eustis, Lake County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.      **Clarity** is a Delaware corporation with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

7.      Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

8.      Clarity is a nationwide *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

9.      Clarity is a large, nationwide CRA which maintains detailed files on consumers' check writing habits, bank account openings and closings, and issues relating to checking account closures due to repeated overdrafts, fraud, or other reasons.

10.     This proprietary data is of paramount interest to virtually all online payday lenders who make loans to consumers in the United States, since most online payday lenders utilize sophisticated underwriting algorithms to ascertain if a consumer is a good risk for an online payday loan.

11.     Online payday loans are generally high-risk loans, made to consumers with poor traditional credit histories.

12.     Indeed, many online payday lenders charge interest rates of 700% annually or higher. Section 687.071(3), Florida Statutes, renders loans made with annual interest rates greater than **45%** a third-degree felony.

13.     Section 687.071(7), Florida Statutes, states: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."

14.     These online loans are thus illegal and unenforceable in Florida.

15.     CRAs like Clarity are required by the FCRA to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." *See* 15 U.S.C. § 1681e(a).

16.     The FCRA at §1681b(a)(3) prohibits a CRA from selling a report about a consumer unless it has reason to believe the person to whom it furnishes the report to has permissible purpose to obtain it.

17.     If the identity of the end-user of a credit report cannot be verified because the end-user provides false information about its identity, the CRA would have no legal ability to furnish that end-user a report on a consumer, since it would have no reasonable basis to believe the end-user intends to use the information for the purposes certified and none other.

### "NetCashMan" Inquiry

18.     On May 22, 2019, Clarity sold a consumer report regarding Mr. Harrington to an entity claiming to be "NETCASHMAN.COM" ("NetCashMan").

19.     Upon receipt of NetCashMan's inquiry, Clarity obtained supplemental information from its parent company, the nationwide CRA Experian Information Solutions, Inc. ("**Experian**"), who maintained a record of the inquiry. **SEE PLAINTIFF'S EXHIBIT A.**

20.     The report sold by Clarity to NetCashMan included Mr. Harrington's phone numbers, detailed address history, employment information, credit card balances and account numbers, mortgage or rental history, and other highly personal, sensitive information regarding the subject consumer.

21.     Due to the sensitivity of this information, prior to providing a consumer report regarding Mr. Harrington to NetCashMan, Clarity, as a CRA, was required by the FCRA to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." *See* 15 U.S.C. § 1681e(a).

22.     NetCashMan.com is an online lending website operated by S&S Financial Partners, LLC ("S&S financial"), and its owner Robert Richard Sullivan ("Sullivan").

23.     Sullivan registered S&S Financial as a limited liability company with the Utah Division of Corporations, stating the purpose of the company was "consumer lending." **SEE PLAINTIFF'S EXHIBIT B.**

24.     S&S Financial and Sullivan stated their "principal" office address to be 299 South Main Street, Suite 1300, Salt Lake City, UT 84111, which is a rent by-the-hour virtual office address. *Id.*

25.     NetCashMan.com offers loans at interest rates of 651% annual interest or higher.

26.     NetCashMan.com indicates that a $500 loan, paid back in eight bi-weekly installments, costs a total of $1,114.89 – assuming the consumer is a "returning customer" and eligible for this "discounted" rate. **SEE PLAINTIFF'S EXHIBIT C.**

27. Pursuant to Section 687.071(7), Florida Statutes, these loans are void and unenforceable in the state of Florida.

28. S&S Financial, doing business as NetCashMan, in its inquiry to Clarity, indicated that its address is "38 Sloan St., Roswell, GA 30075."

29. This address is located in Fulton County, Georgia; it is the offices of Miles, Hansford & Tallant, LLC, a criminal defense law firm.

30. Property records show that this address is owned by Brian A. Hansford, a judge in nearby Milton, Georgia.

31. No consumer lending business of any kind exists at 38 Sloan Street, Roswell, GA, 30075.

32. Clarity failed to make a reasonable effort to verify the identity of S&S Financial/NetCashMan prior to furnishing "NetCashMan" a consumer report regarding Mr. Harrington. Had Clarity made a reasonable attempt to verify the identity of S&S Financial/NetCashMan, it would have realized that S&S Financial/NetCashMan had provided Clarity a false address which belonged to a criminal defense law firm, and that is purported address provided to the Utah Secretary of State was a cheap virtual office.

33. Clarity's records also indicate that it did not so much as have a phone number on file for "NetCashMan." **SEE PLAINTIFF'S EXHIBIT A.**

34. Further, Clarity was required by the FCRA to have at least a modicum of belief that S&S Financial was operating a legitimate business. However, even a cursory review of NetCashMan.com would have quickly called into question the legitimacy of the business.

35. NetCashMan.com was clearly created from a template; much of the "dummy" text had never been taken out.

36.     At all times relevant, NetCashMan.com featured a customer testimonial from "John Doe" in pseudo-Latin, placeholder babble ("Fusce dapibus, tellus ac cursus commodo, tortor mauris condimentum nibh"). **SEE PLAINTIFF'S EXHIBIT D.**

37.     The only address listed on NetCashMan.com's website is 304 S. Jones Blvd., Suite 2975, Las Vegas, NY 89107.

38.     This address actually belongs to PhysicalAddress.com, which, as its name implies, is a "virtual mailbox and virtual address" service and not an actual physical location of NetCashMan.

39.     Despite being a self-avowed "direct lender," S&S Financial and NetCashMan lacked a lending license from any state regulator, despite simultaneously claiming to lend to consumers nationwide.

40.     In sum, any verification of identity approaching reasonable would have concluded that "NetCashMan" of Sloan, Georgia was *not* who it claimed to be, as the clues were numerous and obvious, including:

- its half-unfinished website, with testimonials from "John Doe" and placeholder text, and whose contact information contains only a virtual address;

- the fact S&S Financial provided a different virtual address to the Utah Secretary of State;

- the fact the address NetCashMan (e.g., S&S Financial) provided to Clarity was another business' address in a completely different state;

- the fact Clarity was unable to obtain a working phone number for the "lender,"

- and the fact the purported nationwide "lender" lacked any kind of regulatory license or registration with any state.

41.     Thus, when Clarity furnished a report concerning Mr. Harrington to "NetCashMan" in September 2019, it had no reasonable basis to believe the report was requested in connection with any legitimate business purpose and would only be used by "NetCashMan" for the purposes certified and none other.

42.     Upon information and belief, despite certifying to Clarity that it (e.g., NetCashMan) was the "end user" of the report and that it would not re-sell or share the information with third parties, NetCashMan furnished the report in its entirety to third parties, including Infinity Enterprise Lending Systems of Sparks, Nevada.

### Vivus Servicing Inquiries

43.     On April 9, 2019 and July 29, 2019, Clarity sold reports to an entity claiming to be "VIVUS SRV LENDGREEN." **SEE PLAINTIFF'S EXHIBIT E.**

44.     Presumably, "Lendgreen" refers to the online payday lender Lendgreen.com.

45.     Lendgreen.com is supposedly owned and operated by Niiwin, LLC, a tribal lending entity that is in turn owned by the *Lac du Flambeau Band of Lake Superior Chippewa Indians* (the "**LDF Tribe**").

46.     According to its website, Lendgreen makes loans to consumers at interest rates ranging from 720% to 795% annually.

47.     As such, Lendgreen's loans are illegal and unenforceable in Florida.

48.     The LDF Tribe claims Niiwin, LLC operates from offices at 597 Peace Pipe Rd., 2nd Floor, Lac Du Flambeau, WI 54538.

49.     This address is a small building, the first floor of which is occupied by the LDF Smoke Shop.

50.    Roughly 50 other tribal lending entities, each with dozens of employees, supposedly cram themselves into this same office.

51.    Despite purported "tribal" ownership by a Native American tribe, the address provided by Vivus Servicing/Lendgreen in its application for a subscriber account with Clarity was 1320 Cornwall Rd., Ste. 2014, Oakville, Ontario, Canada. **SEE PLAITNIFF'S EXHIBIT F.**

52.    The LDF Tribe and its holding company, LDF Holdings, have no presence in Canada.

53.    Indeed, the LDF Tribe does not operate Lendgreen.

54.    Rather, Lendgreen is operated by 4Finance, S.A. ("**4finance**"), a large, worldwide payday loan conglomerate based in Riga, Latvia.

55.    Vivus Servicing is a wholly owned subsidiary of 4finance.

56.    4finance maintains an office at 1320 Cornwall Rd., Oakville, Ontario, CA.

57.    When Clarity sold "Vivus Srv/Lendgreen" a copy of Mr. Harrington's consumer credit report in January 2019, it had zero reasonable basis to believe the report was for legitimate purposes and would only be used by Vivus Servicing, a company under the umbrella of a Latvian conglomerate.

58.    Vivus Servicing claimed to be located in Ontario, Canada, yet simultaneously claimed to be operating a payday lending business from the second floor of a cigarette store in rural Wisconsin.

59.    Vivus Servicing has no office in Wisconsin, or anywhere in the United States.

60.    4finance, the parent company of Vivus Servicing, does not make loans in the United States.

61.     Clarity failed to make a reasonable effort to verify the identity of Vivus Servicing/Lendgreen prior to furnishing it a consumer report regarding Mr. Harrington, as required by 15 U.S.C. § 1681e(a).

62.     Had Clarity made a reasonable attempt to verify the identity of Vivus Servicing/Lendgreen, it would have realized that the address provided by the lender was not in the same country as the *American* tribe which claimed to operate the business, and even a quick Google search regarding Vivus Servicing would have revealed it was a lending conglomerate in Eastern Europe.

63.     Clarity also sold reports regarding Mr. Harrington to an entity claiming to be "VIVUS SRV NORTH STAR" on April 9, 2019, May 21, 2019, June 24, 2019, and July 29, 2019. **SEE PLAINTIFF'S EXHIBIT E.**

64.     Presumably, "North Star" refers to the online payday lender North Star Finance LLC, d/b/a Northcash ("**North Cash**").

65.     North Cash claims to be "an economic arm of the Fort Belknap Indian Community, a federally-recognized Indian tribe located in Hays, Montana."

66.     The Fort Belknap Indian Community ("**Fort Belknap Tribe**"), like the LDF Tribe, has myriad rent-a-tribe deals with dozens of different domestic and international companies; each one of these investors simply pays a fee, typically 2%, of loan revenue to use the Fort Belknap Tribe's name and, ostensibly, its tribal sovereign immunity, to provide legal cover for what are categorically illegal loans in 90% of the United States.

67.     Once again, Clarity failed to make a reasonable effort to verify the identity of Vivus Servicing/North Cash prior to furnishing it consumer reports regarding Mr. Harrington.

68.     Had Clarity made a reasonable attempt to verify the identity of Vivus Servicing/North Cash, it would have realized that the address provided by the lender was not in the same country as the *American* Indian tribe which claimed to operate the business.

69.     Rather, the business claimed on its website to operate from a rural outpost in Hays, Montana.

70.     Clarity had no reasonable belief that by furnishing reports to Vivus Servicing in Canada it was, actually, somehow furnishing reports to a tribal entity in Montana, and that the reports would only be used for permissible purposes by that tribal entity in Montana.

71.     Clarity's failures are more pronounced when considering this is the same Vivus Servicing which it was furnishing reports to for Lendgreen – a lender in a different state, with a different address, supposedly operated by a different Native American tribe.

72.     Due to Clarity's failure to investigate NetCashMan and Vivus Servicing, Mr. Harrington's highly sensitive credit information was sold to online loan sharks charging interest rates that vastly exceeded the maximum allowable in Florida.

73.     Mr. Harrington has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA

74.     Mr. Harrington incorporates Paragraphs 1 – 73 as if fully restated herein.

75.     Clarity violated **15 U.S.C. §1681e(a)** when it failed to make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report by accepting, without challenge or independent verification, the identities of NetCashMan/S&S Financial, Vivus Servicing/Lendgreen, and Vivus Servicing/North Cash. Had Clarity made any reasonable efforts to verify NetCashMan/S&S

Financial, it would have determined that the addresses provided, both to Clarity and on its website, were fictitious, and that NetCashMan is an online lender whose loans violate state usury laws, such as Florida's, who attempts to obfuscate its true location and identities due to the illegal nature of their lending enterprises. Likewise, had Clarity made any reasonable efforts to verify Vivus Servicing, it would have determined that the address provided belonged to a worldwide payday loan conglomerate, 4finance, and not the tribal lenders that were the purported end users of Mr. Harrington's consumer reports.

76.     Clarity violated **15 U.S.C. § 1681b(a)** when it provided reports regarding Mr. Harrington to NetCashMan/S&S Financial, Vivus Servicing/Lendgreen, and Vivus Servicing/North Cash, when it had no reason to believe that these entities had legitimate permissible purposes to obtain credit reports concerning Mr. Harrington and no legitimate business need for the reports.

77.     Mr. Harrington has suffered damage to his credit scores, as well as damages in that his personal, highly confidential information, such as his employment history, credit history, address, and Social Security number, have been obtained by a party who had no legitimate purpose for obtaining it.

78.     Clarity's conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

79.     As a result of its conduct, Clarity is liable to Mr. Harrington pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Harrington respectfully requests this Honorable Court enter judgment against Clarity for:

a.   The greater of statutory damages of **$1,000.00** per incident (for a total of **$7,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Harrington's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Harrington hereby demands a jury trial on all issues so triable.

Respectfully submitted on January 29, 2021, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
BGeiger@SeraphLegal.Com
Counsel for Plaintiff

## ATTACHED EXHIBIT LIST

A   Mr. Harrington's Experian Consumer Disclosure, January 19, 2021, NetCashMan Inquiry
B   S&S Financial's Corporate Registration Filing for Utah
C   Screenshot of Netcashman.com Webpage Showing Fees Charged
D   Screenshot of Netcashman.com Webpage Showing Fake Testimonials
E   Mr. Harrington's Experian Consumer Disclosure, January 19, 2021, Vivus Inquiries
F   Address reported by Vivus to Clarity, Appearing on Unrelated Consumer's Disclosure

## EXHIBIT A
## Mr. Harrington's Experian Consumer Disclosure, January 19, 2021, NetCashMan Inquiry



# EXHIBIT B
## S&S Financial's Corporate Registration Filing for Utah

**State of Utah**
**Department of Commerce**
**Division of Corporations & Commercial Code**
**Certificate of Organization (Limited Liability Company)**

*This form cannot be hand written.*

Date: 09/22/2017
Receipt Number: 7062133
Amount Paid: $70.00

RECEIVED
SEP 28 2017
Utah Div of Corp. & Comm. Code

Important: Read instructions before completing form.    Non-Refundable Processing Fee: $70.00

| | |
|---|---|
| **1. Name of Limited Liability Company:** | S & S Financial Partners LLC |

**2. Principal office address:**
Street Address Required
PO Box can be listed after Street Address

299 South Main Street, Suite 1300 Salt Lake City, UT 84111
Address       City       State       Zip

**3. The name of the Registered Agent (Individual or Business Entity or Commercial Registered Agent):**
Pacific Registered Agents, Inc.

*The address must be listed if you have a non-commercial registered agent. See instructions for further details.*

Address of the Registered Agent: 299 South Main Street, Suite 1300 Salt Lake City, UT 84111
Utah Street Address Required. PO Boxes can be listed after the Street Address

City: Salt Lake City       State UT       Zip: 84121

**4. Signature of Organizer**
Signature:

| | | | |
|---|---|---|---|
| **5. Name and Address of Members and/or Managers (optional):** | 1. Name | | Position |
| | Address | City | State   Zip |
| | 2. Name | | Position |
| | Address | City | State   Zip |

| | |
|---|---|
| **6. Duration (optional):** | ✓ The duration of the company shall be perpetual |
| | ☐ The duration of the company shall be _____ |

**7. Purpose (optional):** Consumer Lending

Under GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For confidentiality purposes, you may use the business entity physical address rather than the residential or private address of any individual affiliated with the entity.

Optional Inclusion of Ownership Information: This information is not required.

| | | |
|---|---|---|
| Is this a female owned business? | ○ Yes ◉ No | |
| Is this a minority owned business? | ○ Yes ◉ No | If yes, please specify: Select/Type the race of the owner here |

State of Utah
Department of Commerce
Division of Corporations and Commercial Code

03/16

10543939

SEP 28 17 AM 10:00

# EXHIBIT C
## Screenshot of Netcashman.com Webpage Showing Fees Charged

| RETURNING CUSTOMER DISCOUNTED BI-WEEKLY LOAN | | | |
|---|---|---|---|
| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
| 651% | $614.89 | $500.00 | $1,114.89 |

| Sample Payment Schedule | | |
|---|---|---|
| Payment Number | Payment Due On | Payment Amount |
| 1 | 10/16/15 | $139.37 |
| 2 | 10/30/15 | $139.37 |
| 3 | 11/13/15 | $139.37 |
| 4 | 11/27/15 | $139.37 |
| 5 | 12/11/15 | $139.37 |
| 6 | 12/25/15 | $139.37 |
| 7 | 01/08/16 | $139.37 |
| 8 | 01/22/16 | $139.38 |

Please Note: You always have the option to pay the loan off in full with no pre-payment penalty. In fact, S & S FINANCIAL, LLC encourages the accelerated reduction of loan principal to reduce the total number of payments made by the customer, thereby reducing the overall cost of credit.

**DUE DATE**

Your loan payments are due on your following pay date, unless your pay date happens to fall on a weekend or holiday (your actual due date will be on the business day either before or after as you specified on your loan application). Note: We request that you notify us at least 2 business days prior to your due date if you choose to change your payment amount. The installment payment per your schedule will be paid on the scheduled pay dates. After the schedule has been completed on time then your loan would be paid in full. You may be sent reminders via email outlining your due date options prior to your due date.

We strongly encourage principal reduction and early payment to reduce your finance charges.

# EXHIBIT D
## Screenshot of Netcashman.com Webpage Showing Fake Testimonials



# EXHIBIT E

## Mr. Harrington's Experian Consumer Disclosure, January 19, 2021, Vivus Inquiries



1/19/2021        Experian - Access your credit report

**Account name**
CLARITY SERVICES INC

PO BOX 5717
CLEARWATER, FL 33758
866 390 3118

**Date of request(s)**
07/29/2019
06/24/2019
05/21/2019
04/09/2019
**Comments**
On behalf of VIVUS SRV NORTH STAR (12 for 30

**Account name**
CLARITY SERVICES INC

**Comments**
On behalf of VIVUS SRV LENDGREEN (182 for 30

**Date of request(s)**
07/29/2019
04/09/2019

18/23

# EXHIBIT F
## Address Reported by Vivus to Clarity on Unrelated Consumer's Disclosure

Account name
CLARITY/VIVUS SRV/NORTH

Date of request(s)
09/27/2019

1320 CORNWALL ROAD, STE 204
OAKVILLE, ON 00000
No phone number available